## CONSTRUCTION OF THE ACT TO OBVIATE GRADE CROSSINGS.

Superior Court of Cincinnati, Special Term.

### THE CITY OF CINCINNATI v. THE PITTSBURGH, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY.

Decided, April 25, 1908.

*Crossings—Act to Obviate at Grade—Remedial in Its Nature—Not in Pari Materia with Other Statutes on Similar Subjects—Must be Construed to Carry out the Purposes of Its Enactment—Circuit Court Without Jurisdiction—Re-location of Streets—Authority to Place Piers in Streets—Constitutional Law—Public Policy—Implied Powers—Municipal Corporations—Section 3337-17a.*

1. That part of Section 2 of the act of April 2, 1906 (Revised Statutes, 3337-17a), providing that if a municipality and railway company are unable to agree as to the plans and specifications for avoiding a grade crossing of a street and the railway, the matter shall be submitted to the circuit court for determination whether the public safety requires an abolition of the grade crossing and whether the plans proposed are reasonable and practicable, is void for the reason that it exceeds the jurisdiction of the circuit court as provided by the Constitution; but this provision may be eliminated without affecting the efficiency and purpose of the act.

2. Authority is conferred in this act for the alteration, and re-location of streets; the method of so doing is a matter of detail, dependent on topography and situation, and when exercised reasonably is not open to review by the courts; and the diversion of ground from use for street purposes is not beyond the power of the board of legislation.

3. The clear policy of the state to avoid placing permanent obstructions in the street is not infringed in obviating a grade crossing by placing piers in the street, where they are so situated as not to interfere with travel and any other plan of construction would be so much more expensive as to be prohibitive.

*Geoffrey Goldsmith,* Assistant City Solicitor, for plaintiff.
*William W. Ramsey,* contra.

SPIEGEL, J.

On May 2, 1902, in answer to a general demand from the cities and towns of the state, the seventy-fifth General Assembly

passed an act to abolish grade crossings in municipal corporations. It is a statute separate and apart from, and not *in pari materia* with, other acts on kindred subjects, and must, therefore, be construed in its own light. Thousands of human beings were annually either maimed or killed at these crossings, and the act was passed to give the municipality power to abolish this terrific evil. The statute, with certain changes made April 2, 1906, by the seventy-seventh General Assembly, and now embodied in Bates Annotated Ohio Statutes (Sections 3337-17*a*, Sections 1 to 9 inclusive) provides in substance (Section 1), that any municipal corporation may raise or lower the grade of any street above or below any railroad track therein and may require any railroad company to raise or lower the grade of its tracks and construct ways and crossings that are to be passed under its tracks whenever the legislative body of the municipality deems it necessary.

It may, by ordinance (Section 2), require the railroad company in co-operation with the city engineer or other engineer designated by the board of legislation to prepare and submit to it within six months, unless longer time is mutually agreed upon, plans and specifications for such improvement, specifying the grades to be established for the streets and the height, character and estimated cost of any viaduct or any way above or below any railroad tracks, and the change of grade required to be made of such track, including side-tracks and switches. If the railroad company refuses to co-operate in this work, then the engineer may prepare such plans and specifications satisfactory to the board of legislation and the latter, or, in case of disagreement between the board and the railroad company as to the plans and specifications, either party may submit the question to the circuit court having jurisdiction in the county wherein said municipal corporation is situated, which court after examination of such plans and specifications and after hearing the evidence shall make a finding whether the public safety requires such an improvement and whether such plans are reasonable and practicable. If so, the city may proceed; if not, the improvement can not be made upon such plans. This section further provides:

*"But in change of grade of any railroad, no grade shall be required to exceed the established maximum or ruling grade governing the operation by engines of that division or part of the railroad on which the improvement is to be made, without the consent of the railroad company, nor shall the railroad company's tracks be required to be placed below high water mark."*

Section 3 provides that the cost of the construction of the improvement authorized, *including the making of ways, crossings or viaducts above or below the railroad tracks,* and also including the raising or lowering of the grades of the railroad tracks and side-tracks for such distance as may be required by such municipality and made necessary by such improvement, together with the cost of any land or property purchased or appropriated, and damages to owners of abutting property or other property shall be borne one-half by any municipality and one-half by any such railroad company or companies. This section further provides the manner of judicial inquiry into damages and the mode and time of payment of the railroad company's proportion of cost.

Section 4 fixes the height of viaducts.

Section 5 I shall cite in full because it becomes very important in construing the scope and operation of the statute.

Section 5. "The land or property required to make any alterations in any street or highway necessitated by the proposed improvement shall be purchased or appropriated by the municipality or company after the manner provided by law for the appropriation of private property for public use, and the land or property required to make any alteration in the railroad or railroads necessitated by the proposed improvement shall be purchased or appropriated by the railroad company or companies after the manner provided for the appropriation of private property by such corporation; but the municipality shall not appropriate land held or owned by any railroad company necessary for the use of such railroad company in maintaining and operating its road."

The other sections of the statute provide for the cost of maintenance of the improvement, its apportionment between the municipality and the railroad company, the tax levy, the proportion of the share of expenses that railways shall bear, and the final

section which provides that "all acts and parts of acts in conflict or inconsistent with this act are hereby repealed."

In accordance with the statute the board of legislation of the city of Cincinnati passed the necessary ordinances and together with the defendant, the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company, agreed upon plans and specifications necessary to obliterate one of Cincinnati's death traps, the Rookwood grade crossing on Eastern avenue, making it a work of magnitude owing to the topography of the ground, on one side the Ohio river and the railroad yards with its numerous tracks and on the other Cincinnati's hills, which necessitated in the judgment of the board of legislation and the railroad company the abandonment of a part of Eastern avenue, its relocation and the building of a large viaduct supported by eight stone piers in the middle of Eastern avenue thus relocated.

The city solicitor of Cincinnati, in pursuance of his duty, before the incurring of any expense on the part of the city, instituted a suit in this court to test the constitutionality of the act, and the case was tried before me on the law and the facts. The objections raised by the city solicitor to the act are as follows:

1. That the grade abolition statute, the only source of power of council in the premises, is invalid—

a. Because the court-resort provision thereof is void, as contrary to Section 6 of Article IV of the Constitution of Ohio.

b. Because the court-resort provision being unconstitutional, the entire statute must fall, it being inseverable.

2. That Eastern avenue, between Crane and Litherbury streets, is a dedicated street; that it has not been condemned, and therefore the intended diversion of the street from street purposes is beyond powers of council.

3. If the statute is not invalid, nevertheless it does not confer powers claimed in the premises by council, which has only those powers expressly given or necessarily implied.

a. There is no express or implied power to erect piers or abutments in public streets.

b. There is no express or implied power permanently or exclusively to occupy a street.

c. There is no express or implied power to obstruct a street.

*d.*   There is no express or implied power to relocate a street.

*e.*   There is no express or implied power for new occupancy of streets.

*f.*   There is no express or implied power transversely to cross over and along the entire length of a street.

Before entering upon the questions raised by the solicitor, let us examine the statute as it stands. I have already stated that the act is not *in pari materia* with other statutes incidentally referring to the same subject, because its scope and aim are distinct and unconnected. In order to ascertain its aim the court is warranted in availing itself of all legitimate aids to ascertain its true intentions. Among such are extraneous facts of which the court may take judicial notice. The object sought to be accomplished by the passage of the statute exercises a potent influence in determining the meaning of not only the principal but also of the minor provisions of the statute. To ascertain it fully, the court is greatly assisted by knowing, and it is permitted to consider, the mischief intended to be removed or suppressed, or the necessity of any kind which induced its enactment. Now, it is a notorious fact, of which the court takes judicial notice, that railroad grade crossings in large and small cities have demanded innumerable human sacrifices until the evil called aloud to the Legislature for redress, resulting in the passage of the act under discussion. It is, therefore, a statute which concerns the public good or the general welfare, and falls by virtue thereof under the class of remedial statutes, and the rule is that, in construing a remedial statute which has for its end the promotion of important and beneficial public objects, a large construction is to be given, when it can be done without doing actual violence to its terms in order to suppress the mischief and advance the remedy. For this purpose, it is a settled rule to extend the remedy as far as the words will admit, that everything may be done in virtue of the statute in advancement of the remedy that can be done consistently with any construction.

Keeping this in view, let us now consider the objections raised by the city solicitor. Taking the first, it is his claim that the statute is void because Section 2 of the act provides that if the municipality and the railroad are unable to agree on the plans

and specifications, the matter may be submitted by either party to the circuit court for a determination whether public safety requires an abolition of the grade crossing, and whether the plans are reasonable and practicable. Section 6 of Article IV of the Constitution of Ohio, however, provides that the circuit court shall only have like original jurisdiction with the Supreme Court and such appellate jurisdiction as may be provided by law. And Section 2 of Article IV of the Constitution provides that the Supreme Court shall have original jurisdiction in quo warranto, mandamus, habeas corpus and procedendo; that, therefore, the giving of original jurisdiction to the circuit court in this matter is a violation of the constitutional provisions just quoted, and that, therefore, the statute is void.

Taking for granted this objection is well taken, then said part of Section 2, placing this duty upon the circuit court, may be eliminated without affecting the sufficiency and purport of said act, when and wherever the municipality and railroad company, as in the case at bar; agree that public safety requires such improvement to be made, and also agree upon the plans and specifications. This is in accordance with the well known rule stated by Judge Cooley in his work on ''Constitutional Limitations,'' page 246:

''A statute may contain some such (unconstitutional) provisions, and yet the same act having received the sanction of all branches of the Legislature, and being in the form of law, may contain other useful and salutary provisions, not obnoxious to any just constitutional exception. It would be inconsistent with all just principles of constitutional law to adjudge these enactments void because they are associated in the same act but not connected with or dependent on others which are unconstitutional. Where, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning, that it can not be presumed the Legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be contained in the same section, but yet be perfectly distinct and separable, so that the first may stand though the last fall. The point is not whether they are con-

tained in the same section, for the distribution into sections is purely artificial, but whether they are essentially and inseparably connected in substance. If when the unconstitutional portion is stricken out, that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained.'' (See, also, *Treasurer* v. *Bank*, 47 O. S., 504, and *Bowles* v. *State*, 37 O. S., 35.)

Applying this rule of construction to the act in question, I hold that that part of the statute, granting power to the circuit court, must be eliminated, and the rest of the enactment stand.

The objection raised by the city solicitor that Eastern avenue between Crane and Litherbury streets is a dedicated street, and that it has not been condemned between these streets, and that therefore its intended diversion from street purposes is beyond the power of the board of legislation, may be disposed of in a few words.

The testimony showed that the abutting property owners are on one side the railway and on the other side the city itself by reason of its expropriation proceedings under this act. This is, therefore, not a case of public common where the property would revert to the original dedicators, but of a public street where it reverts to the abutting property holders—in this case the contesting parties.

The building of each viaduct depends upon its peculiar topographical features, and the act outlines in general terms the powers given to municipalities to carry out its purpose. Statutes are seldom written in such precise or categorical terms as to point out inclusively and exclusively all their intended applications. General and more or less flexible language is used. A statute is construed with reference to the subject of the act—its purpose. When the Legislature gives power to a public body to do anything of a public character, the Legislature means also to give to such body all rights without which the power would become wholly unavailable.

Where a power is granted and the mode of its exercise not described, it will be implied that it is nevertheless to be exercised. As stated by Judge Minshall in *Doyle* v. *Doyle*, 50 O. S., 341:

"That which is plainly implied in the language of a statute is as much a part of it as that which is expressed; no statute should be so construed as to lead to an absurd result."

The statute in Sections 1 and 2 authorizes the construction of ways and of crossings above and under the track of a railroad, the specifications of the grades to be established for the streets, and in Section 5 expressly provides that the land or property required to make any alterations in the street or highway necessitated by the proposed improvement shall be appropriated by the municipality. This certainly gives express authority for the alterations of streets, and the manner of doing it is simply one of the details left to the judgment of the municipality, dependent upon the situation of the surrounding lands, and, if exercised reasonably, not subject to review by the courts. It is one of the implied powers necessarily granted to carry into effect the purpose of the statute. So is the power of re-locating the street and of creating new ways made necessary by the improvement. It certainly can not have been the intent of the law-makers that each of these acts would have to be done in pursuance of other statutes not *in pari materia* with the act under consideration granting to the city rights in its streets.

Finally, the city solicitor raises the question that there is no express or implied power given to the board of legislation to place piers in Eastern avenue to support the viaduct. The act in question is not one granting franchises to a railroad company, but is a statute in furtherance of a public necessity and, as I have shown, must therefore be liberally construed. There is no question that a municipality under existing laws can not by ordinance or otherwise grant a right to a railroad company to encumber the city streets with piers or abutments solely for the benefit of said railroad company. The enactment we are now considering, however, does nothing of the kind. It is a statute passed by the General Assembly granting powers to and imposing a duty upon the municipalities of the state to abate an evil, leaving the manner of the abatement in each instance to the legislative body together with the railroad company, imposing upon each one-half of the expense of making the improvement and its maintenance.

The evidence in the case before me shows that in order to comply with the requirement of Section 2 of the statute, namely, that no grade shall be required to exceed the established maximum grade of that division of the railroad in which the improvement is to be made without the consent of the railroad company, nor shall the railroad company's tracks be required to be placed below high water mark, it becomes necessary to build the viaduct with abutments and piers; for if instead of this an arch viaduct were to be built, it would place the grade far above the maximum grade established by the statute, and, further, would place Eastern avenue below the high water mark of our floods.

The evidence further shows that even were the railroad to consent to the change of grade, the cost of the removal of this grade crossing would become prohibitive to the city, as it would add more than a million dollars to the present cost of six hundred thousand dollars, there being in the city one hundred and thirty-five grade crossings which will have to be removed by the city.

I recognize fully that it is the policy of our state to avoid as far as possible the placing of obstructions in our streets, and while the act under consideration clothes the municipality with the necessary implied power to build a viaduct in the manner indicated by the plans and specifications, that this should not be done where and whenever it can be avoided.

The testimony showed that these piers will only be eighteen by fourteen inches, the width of Eastern avenue at that point being fifty-four and one-half feet, leaving a clearance on the north side of the piers of twenty-eight feet and on the south side of sixteen feet. The superintendent of track elevations and subways testified that in Chicago grade crossings had been changed in a similar manner to the plan now under consideration, and that the use of streets thus containing piers therein, leaving the width of the street as here, had not proved any hindrance to travel in said city.

Taking all of this testimony together it clearly shows that the purposes of the act in this instance can only be effected by making this improvement in accordance with the plans and specifications submitted, without obstructing travel in Eastern avenue or subjecting it to high water, a local condition of which the

court must take judicial notice; and further that, even with the consent of the railway company, any other mode of construction would become prohibitive by reason of its enormous cost, thus avoiding the very scope of the act.

I find, therefore, as a matter of law, that the act in question is a remedial statute, and that in accordance with the well settled rules of law it must be construed largely and beneficially so as to suppress the mischief and advance the remedy, adopting a construction which will appear the most reasonable and the best suited to accomplish its object, and that a construction which would lead to an absurdity must be rejected.

I further find, as a matter of fact, that the plans and specifications adopted by the board of legislation and the railroad company are the only feasible plans under the provisions of the act and the topographical conditions of the land, to carry out the purport of the statute. The prayer of the solicitor for a permanent restraining order must be, therefore, and hereby is, refused.